[Civ. No. 9734.   Third Dist.   Feb. 8, 1960.]

Estate of LENA STADLER, Deceased. BARBARA L. WITTPEN et al., Appellants, v. FRANK H. WITTPEN et al., Respondents.

Thomas W. Loris and C. E. O'Neill for Appellants.

Mento, Buchler & Littlefield, George K. Littlefield and Theodore H. Morrison for Respondents.

WARNE, J., pro tem.*—Barbara L. Wittpen and Frank Schuler, cousins of the decedent, Lena Stadler, have appealed from an order of the probate court settling the first and final account of the administrators with the will annexed of the estate of Lena Stadler, from an order denying the claim of an interest in the estate, and from an order settling an amended supplemental account and report of the administrators and ordering the distribution.

*Assigned by Chairman of Judicial Council.

Decedent died testate on December 6, 1957, leaving a holographic will dated February 27, 1948, wherein certain specific bequests totaling $24,750 were made to a number of relatives, including appellants, friends, charitable organizations and the St. John's Lutheran Church. Following the specific bequests, the will concluded: "Mrs. Anna Hoerner & Chas Fischer to Take what they want in the house—Linen's & so forth Anna Hoerner to have gold-dinner set & Chas Fischer Silver (Tea set) Divide the rest between Hoerners & Chas Fischer (money left over when Settled."

The total estate was appraised at $76,926.84. It consisted of three parcels of real property of the appraised value of $40,500, promissory note and bonds of the value of $10,417.84, cash in the amount of $25,374 and personal property of the value of $635.

According to the parties the only question presented by this appeal is whether or not the trial court erred in holding that the real property was bequeathed by the final sentence of the will. It is appellants' contention that decedent did not dispose of any of her real property in her will, but only disposed of her money and personal property.

The instrument began: "Last Will & Testament of Lena Stadler." It concluded: "Divide the rest between Hoerners & Chas Fischer (money left over when Settled." It is clear that except for the words "money left over when Settled" which are preceded by a parenthesis, an interpretation that the real property would have passed under the will could not be challenged. It is only by the use of the phrase "money left over when Settled" that an ambiguity arises.

A will must be construed according to the intention of the testator as expressed therein, and this intention must be given effect if possible. Each case depends on its own particular facts and precedents are of small value. (*Estate of Wilson*, 184 Cal. 63, 66-68 [193 P. 581].)

Section 103 of the Probate Code provides: "Where the meaning of any part of a will is ambiguous or doubtful, it may be explained by any reference thereto, or recital thereof, in another part of the will. All the parts of the will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail."

In *In re Miller's Estate*, 48 Cal. 165 [17 Am.Rep. 422], the will began: "I give, devise, and bequeath, all the estate, real and personal, or mixed, of which I may die seized or

possessed, or in any way entitled''; then followed six specific bequests; ''Seventh and lastly. That my mother receive the balance of my money for her benefit so long as she lives, and for her heirs after.'' The court there in construing said will, said that a devise of money is held to include the personal estate only when it appears from the face of the will, construed in the light of the surrounding facts, that such was the intention of the testator and that the testator there used the word ''money'' as the equivalent of personal estate. The court said that under California law there is no reason why there should be any distinction between real and personal property.

The rule concerning the meaning of the word ''money'' when used in a will is stated in *Estate of Whitney*, 162 Cal. App.2d 860, 865 [329 P.2d 104], as follows:

''The word 'money' used in wills is essentially ambiguous. (Thompson on Wills, 2d ed., 384, § 245.) In a bequest it means money and money only, unless there is in the context of the will something to indicate that the testator intended a more extended meaning. (*Estate of Boyle*, 2 Cal.App.2d 234, 236 [37 P.2d 841].) [ When used in a will it has no fixed or technical meaning, but is a term of flexible scope having either a restricted or a wide meaning according to the signification which the testator intended to give the word, and may be used to mean cash only, personal property, or even wealth—that is, property of any kind that may be converted into cash. (*Industrial Trust Co.* v. *Saunders*, 71 R.I. 94 [42 A.2d 492, 495] ; 26 Cal.Jur. 970, § 269 ; 96 C.J.S. 162, § 759 (d) ; anno.: 93 A.L.R. 514; 173 A.L.R. 656.) Where the context of a will discloses the intent of the testator to attribute to the word 'money' a specific meaning which is more comprehensive than the meaning ordinarily given to it, that meaning will be adopted and may comprehend any class of property defined by the context. (*In re Rogers' Estate*, 91 N.J.Eq. 294 [109 A. 16, 17] ; *In re McKendrie's Estate*, 150 Misc. 665 [271 N.Y.S. 228, 230] ; *Mann* v. *Haines*, 146 Kan. 988 [73 P.2d 1066, 1073] ; *Hinckley* v. *Primm*, 41 Ill.App. 579.)''

In the instant case we have a holographic will written by a person undoubtedly devoid of legal training. Under the circumstances it is doubtful if, in relation to testamentary disposition, she knew any distinction between different forms of property. She did make a will which in itself indicates that it was not her intention to die intestate and it would

be strange indeed if she did not intend to dispose of her entire estate. The fact that she made no mention of her bonds in the will nor of a promissory note is some indication that she made no distinction between ''money'' and other kinds of property. It is, therefore, reasonable to assume that the testatrix was using the word ''money'' in its most flexible scope. Under such circumstances it was not unreasonable for the trial court to conclude that the final sentence was meant to dispose of the remainder of the estate and that the phrase ''money left over when Settled'' was meant to refer to the remainder of the estate and not the remainder of the cash.

■ Where the construction given to an instrument by a trial court is reasonable and appears to be consistent with the intent of the party making it, an appellate court will not substitute another interpretation equally tenable with that given by the trial court. (*Estate of Northcutt*, 16 Cal.2d 683, 690 [107 P.2d 607].) ■ Further, where by the terms of a will it is not made clear that intestacy, either partial or total, was intended, an interpretation which will avoid intestacy will be adopted. (*Estate of Northcutt, supra.*)

All of the orders appealed from are, and each one is, affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 30, 1960.